**Opinion issued July 25, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-23-00302-CR & 01-23-00303-CR**

———————————

**SERGIO CHAVARRIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 20-DCR-093435 & 20-DCR-093436**

**MEMORANDUM OPINION**

A jury convicted appellant Sergio Chavarria of two counts of felony indecency with a child by contact.[1] The trial court assessed his punishment at

---

[1] *See* TEX. PENAL CODE § 21.11(a)(1).

confinement of life for each count.[2] In his sole appellate issue raised in each appeal, Chavarria argues that the trial court "erred by ruling that testimony about [his] sex offender status was admissible, thus denying [him] the constitutional right to a meaningful opportunity to present a defense." Because we conclude that the trial court did not commit reversible error on these evidentiary matters, we affirm.

## Background

The complainant, Elizabeth Jones,[3] who was 16 years old at the time of trial, testified that in October 2020 she went with her mother to have her hair cut at Express Cuts where Chavarria worked. Elizabeth was 13 years old at the time. She stated that Chavarria took her to the sink area while her mom waited up front. Chavarria began touching her inappropriately. She stated that he pulled her shirt down and put his mouth on her breasts, that he squeezed her thighs, and that he kissed her on her mouth. Elizabeth was unsure how to respond at the time, testifying that she "was scared . . . of what was going on" and did not know what to do. Chavarria eventually moved her to a chair where she got her hair cut. Once she left the Express Cuts, Elizabeth told her mother what had just occurred.

---

[2] Chavarria's sentence for these felony indecent exposure cases were enhanced by a prior conviction for sexual assault. *See* TEX. PENAL CODE § 12.42(c)(2).

[3] This name is a pseudonym to protect the identity of the complainant.

Elizabeth also told her mother that something similar had occurred on a prior occasion in February or March 2020, when Chavarria had exposed her breasts and put his mouth on them. Elizabeth testified that she did not report the initial incident to her mother because she was scared, she worried it was her fault in some way, and she just wanted to forget that it ever happened. Elizabeth's mother, Laura,[4] informed police and cooperated in the ensuing investigation, including by taking Elizabeth for an exam and a forensic interview.

Chavarria was charged with indecent exposure by contact for both the February 2020 and the October 2020 incidents.[5] Elizabeth testified regarding Chavarria's conduct toward her, as set out above. Prior to the State calling Laura to the stand, Chavarria's counsel referenced a previous discussion during a pre-trial hearing on a motion in limine and asked that the trial court allow him to question Laura about a civil lawsuit her family had filed against Express Cuts in February 2021.[6] In a hearing outside the jury's presence, Chavarria's counsel asserted, under

---

[4]     This is also a pseudonym.

[5]     Trial court cause number 20-DCR-093435 for the February 2020 offense resulted in appellate cause number 01-23-00303-CR. Trial court cause number 20-DCR093436 for the October 2020 offense resulted in appellate cause number 01-23–00302-CR.

[6]     At the hearing on the State's motion in limine, the parties made arguments about the admissibility of testimony about the civil lawsuit generally. They did not identify any particular testimony that would be elicited, and, thus, did not address the issue of the State's rebuttal testimony about the civil lawsuit. Therefore, nothing in the limine record served to preserve Chavarria's complain on appeal.

Rule of Evidence 613, that he was "allowed to ask questions regarding motive, questions regarding interest." The State responded that it believed that Laura's testimony on the issue of the civil lawsuit would open the door "to [Chavarria's] prior sex offender registration requirements, because that was the reason for filing a lawsuit." The State asserted, "[W]hile the defense wants to make an assertion that [the lawsuit] was motivated by finances or otherwise, the actual answer, which the State would, then, feel like we've got the ability to say is: It wasn't actually due to financial motivation, but due to the fact that" Chavarria was "require[d] to regist[er] and being a previously convicted sex offender was the reason that they filed a lawsuit." The State expressed the concern that Chavarria's intent in eliciting testimony about the civil lawsuit was to argue that Elizabeth fabricated her outcry so that the family could seek remuneration from Express Cuts. Thus, the State argued, it was necessary to allow it to ask questions regarding the family's motivations for filing the civil lawsuit.

As requested, the trial court allowed the parties to question Laura outside the jury's presence. In response to Chavarria's counsel's questions, Laura testified that

*See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (holding that motion in limine is preliminary matter and normally preserves nothing for appellate review, so for error to be preserved with regard to subject of motion in limine, objection must be made at time subject is raised during trial); *see also Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (holding that contention urged on appeal must match with specific complaint made in trial court to preserve error for review).

she filed a civil lawsuit against Express Cuts that requested money damages. Chavarria's counsel asked Laura, "Is this lawsuit based on a financial gain, 'yes' or 'no'?" She answered, "Yes." The State questioned her further about her motives for filing the civil lawsuit, and she explained that she filed it because she "did not want any other child to be hurt the way our daughter was." She testified that the catalyst for filing the lawsuit was when she discovered during an internet search that Chavarria was already listed as a sex offender in the online registry. Laura testified that, although the lawsuit sought damages, her intention in filing it was not primarily to obtain money. Laura stated her family had not received any financial reward or compensation as a result of filing the civil lawsuit.

After Laura gave this testimony outside the jury's presence, defense counsel and the State argued regarding the extent to which Laura's testimony should be permitted in front of the jury. The State argued: "[T]he idea I'm hearing [from] the defense counsel [is] to bring out some sort of motive without allowing the State to clarify the actual truth behind why the lawsuit was filed." The State asserted that if Chavarria's counsel was "allowed to ask just the question [about the existence of the lawsuit], it then makes it misleading to the jury under 403" unless the State is allowed to ask "the follow-up as to why." Thus, the State argued, Chavarria's questions about the civil lawsuit "opens the door to the fact that the defendant was a publicly registered sex offender."

5

Chavarria's counsel argued, "[T]he fact remains, Your Honor, that the witness, under [Rule of Evidence] 613, a witness's bias or interest as it pertains to this particular lawsuit is—is a fact question for the jury to decide whether it impacts the credibility of that witness." He asserted that the jury "has a right to ponder on" whether "there was other motivation. Perhaps there was a money issue." He sought to ask the limited question: "Was there a lawsuit initiated as a result of this incident," without allowing the State to ask follow-up questions that would reveal his status as a registered sex offender as one motive for the civil lawsuit. The trial court responded, however, "I think we have to." The trial court asked Chavarria's counsel whether he would ask about the civil trial, and counsel responded that he would not, but he wanted to "make a bill of the record." The trial court responded, "Okay. Then we're not going to talk about the civil case." Chavarria's "record for bill of exception," as stated on the record was:

> I'm asking that [Laura's] testimony be allowed—that I be allowed to question her with respect to asking whether a civil lawsuit was initiated, as a result of this incident in October. And the reason for that, Judge, would be simply to establish a bias or interest in her response in her testimony. In order for the jury to decide whether or not they believe her.

The trial proceeded without Chavarria asking Laura about the civil lawsuit. The State presented additional evidence, including Laura's testimony about the events at Express Cuts and Elizabeth's outcry after the October 2020 incident. The State also presented testimony about Elizabeth's forensic interview at the

6

Children's Assessment Center, testimony from an expert regarding why children sometimes wait to disclose abuse, evidence from her exam by a Sexual Assault Nurse Examiner, and DNA evidence indicating that Chavarria's DNA was found on a sample taken from Elizabeth's bra.

The jury found Chavarria guilty of indecency with a child by contact for both the February 2020 and October 2020 offenses. The trial court assessed his punishment at confinement for life for each offense. These appeals followed.

## Admissibility of Evidence

In his sole issue in each appeal, Chavarria argues that the trial court erred in concluding that, if he questioned Laura regarding the civil lawsuit against him, he would open the door to introduction of evidence of his sex-offender registration status. He complains that he was prevented from presenting a full defense.

### A.     Standard of Review and Relevant Law

We review a trial court's evidentiary rulings for abuse of discretion and uphold them if they were within the zone of reasonable disagreement. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020). The trial court's ruling will be upheld provided that its decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

To preserve a challenge on evidentiary matters, the record must show that the party made a timely and specific objection on the record, unless the specific grounds are apparent from the context, and obtained an adverse ruling on that objection. TEX. R. APP. P. 33.1(a); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *see* TEX. R. EVID. 103(a) (providing that parties must preserve claim of error in admissibility of evidence with timely objection). A defendant also fails to preserve error when the contention urged on appeal does not match with the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). In other words, an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

Most complaints, even constitutional errors, can be waived on appeal if not raised in the trial court. *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014); *see Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (holding that appellant waived his issue under Confrontation Clause when he did not mention it during his proffer of evidence to trial court). While no "hyper-technical or formalistic use of words or phrases" is required in order to preserve error, "the proffering party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'"

*Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018). Thus, "to preserve an argument that the exclusion of defensive evidence violates constitutional principles, a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the court aware of these grounds." *Id.* at 670–71.

Preserving error is a "systemic requirement," and if error has not been preserved, we should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *see also Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex. Crim. App. 2005) ("Ordinarily, a conviction is not overturned unless the trial court makes a mistake.").

## B. Analysis

As a threshold issue, we consider what arguments were properly preserved and presented to this Court for review. In his offer of proof, Chavarria asked that he "be allowed to question [Laura] with respect to asking whether a civil lawsuit was initiated, as a result of this incident in October" for the purpose of establishing "a bias or interest in her response in her testimony." The trial court did not exclude Laura's testimony on this issue or rule that Chavarria was not allowed to question Laura about the civil lawsuit. The trial court asked Chavarria whether he wanted to ask the question, and he declined based on the nature of the discussion among himself, the State, and the trial court. With no ruling to exclude the testimony,

there is nothing for this Court to review for error. *See* TEX. R. APP. P. 33.1(a); *Montelongo*, 623 S.W.3d at 822.

On appeal, Chavarria phrases his issue as a complaint that the trial court "erred by ruling that testimony about [his] sex offender status was admissible, thus denying [him] the constitutional right to a meaningful opportunity to present a defense." Chavarria argues for the first time on appeal that the trial court's handling of these evidentiary matters "operated to deny [him] the constitutional right to a meaningful opportunity to present a defense" because "[t]estimony about the civil lawsuit was relevant, reliable, and a vital portion of [his] fabrication defense." He argues that the trial court's ruling here rose to the level of a constitutional violation.

We first observe that Chavarria did not present any arguments in the trial court regarding constitutional error, such as arguing that the ruling violated his right to confrontation or his right to present a defense. *See Lovill*, 319 S.W.3d at 691–92 (holding that contention urged on appeal must match specific complaint made in trial court to preserve error for appellate review). In the hearing outside the jury's presence, Chavarria referenced only the relevance of the evidence and Rule of Evidence 613. He did not argue that the inability to question Laura would effectively prevent him from presenting his defense or that the trial court's ruling improperly limited his right to confrontation. Thus, to the extent he complains now

10

that these evidentiary matters violated his rights under the Confrontation Clause or other constitutional provisions, we conclude that the complaints are not preserved for review. *See Garza*, 435 S.W.3d at 260–61 (holding that even constitutional errors can be waived on appeal if not raised in trial court); *Reyna*, 168 S.W.3d at 179–80 (holding that appellant waived his issue under Confrontation Clause when he did not mention it during his proffer of evidence to trial court); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding that appellant failed to preserve his claim that he was denied right to present defense and right to due process and due course of law because he did not make that objection at trial); *see also Golliday*, 560 S.W.3d at 670 ("Parties are not permitted to bootstrap a constitutional issue from the most innocuous trial objection, and trial courts must be presented with and have the chance to rule on the specific constitutional basis for admission because it can have such heavy implications on appeal." (internal quotes omitted)).

Furthermore, Chavarria's argument mischaracterizes the trial court's ruling. Chavarria argued that, pursuant to Rule of Evidence 613, he was entitled to ask Laura about the civil lawsuit because it could potentially reveal a bias or motivation for Elizabeth and her family to make claims against him. The trial court did not exclude this testimony. Rather, the trial court stated its belief that the State should be permitted to ask follow-up questions regarding Laura's motivation for

11

filing the civil lawsuit if Chavarria introduced the existence of the lawsuit in an attempt to undermine her credibility. Even if we construe the trial court's statements that it "th[ought] we have to" allow the State to ask follow-up questions about Laura's motivation in filing the civil lawsuit as a ruling that Chavarria's status as a registered sex offender was admissible, we cannot conclude that the trial court's statements were erroneous or would have constituted an abuse of discretion.

Rule of Evidence Rule 613 permits a party to examine a witness about her bias or interest. *See* TEX. R. EVID. 613(b) ("When examining a witness about the witness's bias or interest, a party must first tell the witness the circumstances or statements that tend to show the witness's bias or interest."). Rule 613 further provides that "[a] witness must be given the opportunity to explain or deny the circumstances or statements that tend to show the witness's bias or interest" and that "the witness's proponent may present evidence to rebut the charge of bias or interest." *See* TEX. R. EVID. 613(b)(3). The trial court's statement that it believed the State should be permitted to ask follow-up questions about Laura's motivation in filing the civil lawsuit comports with the provisions of Rule 613(b)(3). *See id.* Chavarria essentially sought to present limited evidence to the jury to support his argument that Elizabeth and her family had financial motives for fabricating the allegations against him without allowing the State to correct or rebut that

implication. We observe, however, that inadmissible evidence may become admissible if it corrects a false impression created by an opposing party. *See Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.) ("A defendant opens the door by asking a question which creates a false impression that the admission of extraneous offense evidence would correct."); *see also Tovar v. State*, 221 S.W.3d 185, 191 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that, when defense questioning created false impression that video contained exculpatory statement by complainant, State could introduce video); *Redmond v. State*, 629 S.W.3d 534, 546 (Tex. App.—Fort Worth 2021, pet. ref'd) (holding that, when defendant described robbing bank as "crazy decision" and created impression it was out of character for him, State could introduce evidence of other bank robberies); *cf.* TEX. R. EVID. 107 ("If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.").

Nevertheless, the trial court did not expressly rule during the hearing outside the jury's presence that Chavarria's status on the sex-offender registry was admissible. And, because Chavarria decided not to ask Laura about the lawsuit if

13

the State would be allowed to ask follow-up questions, the trial court was not presented with an opportunity to rule on the admissibility of any specific follow-up testimony. Chavarria argues that Laura's testimony would have violated Rule 403, but he made no such objection in the trial court because no such testimony occurred. *See, e.g.*, *Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1991) (holding that to preserve Rule 403 complaint, party must make specific objection on basis of Rule 403).

Chavarria cites cases like *Williams v. State*, 273 S.W.3d 200 (Tex. Crim. App. 2008) and *Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002) to support his argument, but those cases are distinguishable. In *Williams*, the Court of Criminal Appeals considered whether the trial court denied the appellant's "Sixth Amendment right to present a defense and his Eighth Amendment right 'to obtain the jury's effective consideration of his defensive mitigation evidence on punishment' when it excluded the hearsay statement of one of his accomplices which purportedly supported his 'factual and state-of-mind defense.'" 273 S.W.3d at 231. Unlike *Williams*, the trial court here did not make a ruling excluding testimony that Chavarria sought to admit in support of his defense. As discussed above, the gist of the trial court's statement during the hearing was that, if Chavarria questioned Laura regarding her motive in filing the civil lawsuit, the

14

State would also be able to question her on the same topic. Thus, *Williams* is inapposite.

In *Potier*, the Court of Criminal Appeals stated that "evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." 68 S.W.3d at 663. The court discussed limited circumstances in which rulings excluding evidence might rise to the level of a constitutional violation, including (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense or (2) when a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case effectively precludes the defendant from presenting a defense. *Id.* at 659–62. Neither of these circumstances is applicable here. Chavarria was not prohibited from admitting the testimony he sought, and, as we concluded above, the trial court's ruling here did not exclude evidence, nor can we conclude that the trial court's evidentiary rulings were clearly erroneous. *See id.*[7]

We overrule Chavarria's sole issue in each appeal.

---

[7] Because we conclude that the trial court did not make any erroneous rulings, we need not analyze Chavarria's arguments regarding harm.

## Conclusion

We affirm the judgments of the trial court.

Richard Hightower
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).